# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2761 | **DATE** | 12/22/2003 |
| **CASE TITLE** | | Larry McGee vs. JoAnne Barnhart | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#12] is **granted**; Defendant's Motion for Summary Judgment [#16] is **denied**; the case is hereby remanded to the Commissioner for further proceedings consistent with this decision. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

FT/*seey*   courtroom deputy's initials

3
number of notices

DEC 2 3 2003
date docketed

docketing deputy initials

12/22/2003
date mailed notice

FT
mailing deputy initials

**Document Number**

18

U.S. DISTRICT COURT
CLERK
03 DEC 22 AM 3: 33
FILED
Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY J. MCGEE,                    )
                                   )
            Plaintiff,             )
                                   )
       v.                          )          Case No. 03 C 2761
                                   )
JO ANNE B. BARNHART,               )          Magistrate Judge Arlander Keys
Commissioner of Social             )
Security,                          )
                                   )
            Defendant.             )

DEC 2 3 2003

## MEMORANDUM OPINION AND ORDER

Larry McGee is fifty-one years old and suffers from gout or
"gouty arthritis." He claims that, as of September 4, 2000, his
condition prevents him from working, and that he should,
therefore, be entitled to Social Security Disability and
Supplemental Security Income Benefits. The Commissioner of the
Social Security Administration disagreed, and affirmed the
decision of an administrative law judge denying him benefits.
Mr. McGee appealed that decision to this Court, and the parties
have both moved for summary judgment.

### Facts & Procedural History

Larry McGee has suffered from gout or "gouty arthritis" for
about thirty years. According to Mr. McGee, his gout has gotten
worse in recent years, to the point where, as of September 4,
2000, it has left him unable to work. On January 29, 2001, Mr.

McGee applied for Social Security Disability and Supplemental
Security Income Benefits. In his application, Mr. McGee stated
that he had become disabled on September 4, 2000 because of
rheumatoid arthritis, hypertension and gout.

On June 18, 2001, the Social Security Administration denied
Mr. McGee's claim because it found that he was not disabled. In
denying the claim, the SSA determined that, although Mr. McGee's
various conditions restricted somewhat his ability to function,
he still had the ability to do medium work. The denial letter
stated that the SSA "realize[d] that your condition prevents you
from doing your past job(s), but you are still able to do other
types of work which are less demanding." Record at 50. Mr.
McGee requested reconsideration of the denial, and, on January
28, 2002, the Administration determined that the previous non-
disability finding was proper. Record at 55. Undeterred, Mr.
McGee requested a hearing before an administrative law judge
(ALJ), and the case was assigned to ALJ Daniel Dadabo, who held a
hearing on October 25, 2002.

Mr. McGee was represented by counsel at the hearing; his
attorney gave an opening statement, noting that Mr. McGee suffers
from "recurrent gout," which affects "all of his joints,
primarily in the knees and the ankles and the feet," and renders
him unable to work. Record at 25-26. Mr. McGee then testified,
both in response to questions from his attorney, and in response

2

to questions from ALJ Dadabo. With respect to his condition, Mr. McGee testified that his gout flare ups are unpredictable and tremendously painful; he estimated that he gets a flare up about once a month, and that they last about three to four days. Record at 31, 33-34. He testified that the more active he is, the greater the likelihood that he will suffer a flare up; standing and walking exacerbate the gout. Record at 34. He testified that when he is having a flare up in his foot or ankle area, he does not even want to put on a shoe or a sock; someone or something touching his foot is unbearable. Record at 35.

On the question of his ability to work, Mr. McGee testified that he has a high school education, that in the 1980s, he took a course to train him to work as a security guard, and that he has worked as a security guard with various companies since that time. Record at 26-28. He testified that his last job was with Metro Security, where he stood watch over a Cook County Hospital parking lot. Record at 27. He testified that, in that job, he primarily remained seated, monitoring the lot through security cameras, but that the job actually required a substantial amount of walking because he had to make hourly rounds of the area and respond to any situation that might arise. Record at 27-29. Mr. McGee testified that his past employers have been intolerant of his frequent absences; he also stated that, in his opinion, his condition leaves him unable to commit to *any* job - even a job

that would permit him to sit most of the time – because no employer is going to tolerate him missing 3 or 4 days of work every month.  Record at 35.

After Mr. McGee testified, the ALJ called a vocational expert (VE) to testify concerning Mr. McGee's ability to perform his past job and other jobs in the Chicago area.  The VE classified Mr. McGee's past relevant work as a security guard as "semi-skilled, SVP three level, exertional level of light" and explained that "SVP three" is "the lowest level of sem-skilled work there is. . . ."  Record at 43.  The ALJ did not mention any of Mr. McGee's specific impairments to the VE; instead, he asked simply whether the VE thought an individual capable of doing "light work subject to the need for a sit/stand accommodation" could feasibly do past relevant work in this classification, and the VE said "yes."  Record at 43.  The ALJ also asked the VE what other options were available for someone "closely approaching advanced age" who has a high school education, and the VE testified that unskilled work might be a possibility; he suggested that unskilled work at the light level with a sit/stand option might include hand packaging (with approximately 10,000 jobs in the Chicago area), simple bench assembly (with about 7,000 jobs in the Chicago area), and checker, examiner and inspector (with about 2,000 jobs in the Chicago area).  Record at 44.  The VE testified, however, that none of these jobs would be

4

available to someone who was "off task" or absent from work unpredictably for a few days each month; nor would any other jobs be available to someone with that type of a limitation. *Id.* at 44-45. The VE testified that such a limitation would basically take an employee out of competitive employment because maximum tolerance for employee absences is about two days a month. *Id.* He testified that an employer might accommodate such absences once or twice, but no more. *Id.* at 45. Mr. McGee's attorney did not question the VE.

In addition to the live testimony of Mr. McGee and the VE, the ALJ considered a variety of medical records. First, the ALJ considered the records documenting the care Mr. McGee received through the Veterans' Administration. The earliest of these records date from 1996, and include a couple of notes showing that Mr. McGee was treated for gout and then released to return to work with no limitations or restrictions. *See* Record at 149 (indicating that Mr. McGee was treated at the VA Hospital on April 15, 1996 for pain in his right foot, and that he was released to return to work, with no limitations or restrictions, on April 18, 1996); Record at 150 (indicating that he was treated at the VA Hospital on November 11, 1996 "for his illness," and that he was released to go back to work, without limitations or restrictions). The second group of VA records, from the West Side VA Hospital, cover the period from October 24,

2000, when Mr. McGee was treated in the emergency room for pain, through February 20, 2001, when he was seen by the rheumatology department; this block of records also includes records relating to a duodenal ulcer bleed Mr. McGee experienced in October 1998. The final group of records, from the Veterans' Administration Chicago Health Care System, cover the period from February 2002 to September 2002. The records uniformly confirm that Mr. McGee suffers from gout and gouty flare ups. *See, e.g.,* Record at 148 (doctor's notes dated April 15, 1996 showing that patient was treated for foot pain and indicating that gout was the cause of the pain); Record at 134 (November 7, 2000 progress notes indicating that patient has a history of gout, among other things, and was being seen because of pain in his left foot, caused by a gouty flare up); Record at 129 (February 20, 2001 progress notes indicating that patient has history of gout, that he suffers from flare ups, characterized by hot swollen joints that are extremely painful); Record at 169 (February 22, 2002 progress notes indicating history of gout).

Finally, the ALJ considered a report prepared by Dr. Angelito Bernardo, an M.D. who performed a consultative examination on Mr. McGee on March 31, 2001 at the behest of the Bureau of Disability Determination Services. Dr. Bernardo noted that Mr. McGee has a history of gout, that he is obese, and that he walks with a limping gait. Record at 152-53. He noted

6

(presumably per a report from Mr. McGee) that Mr. McGee could walk approximately one to two blocks with the use of a cane. *Id.* at 152. Dr. Bernardo noted that, on examination, Mr. McGee had "bilateral tenderness on both knees"; "decreased range of motion on the right and left knee joint from 150 to 140 degrees bilaterally because of pain and obesity"; tenderness in "[b]oth ankle joints"; "swelling . . . on the left ankle region"; decreased range of motion on the left ankle joint from 40 to 15 degrees on flexion and extension from 20 to 5 degrees . . . because of pain." Record at 153-54. According to Dr. Bernardo, Mr. McGee had "mild to moderate difficulty walking on toes and walking on heels"; he could "walk 50 feet without any assistive device," and he could "walk one block with his cane." *Id.* at 154. Dr. Bernardo's clinical impressions confirm that Mr. McGee "has complaints on both of his knees. He has tenderness noted on both knees with restriction in the range of motion. He also walks with a limping gait [and] has significant pain as well as swelling on the left ankle region [with] restriction of range of motion on the ankle joint." Record at 154. The consultative examination report also included an x-ray interpretation memo on x-rays taken of Mr. McGee's left hand, left knee and left ankle. The radiologist's interpretation notes deformities or irregularities in all three, but does not provide any means of

assessing how they would affect Mr. McGee's ability to function or move.  Record at 159.

ALJ Dadabo issued his decision on November 22, 2002; he concluded that Mr. McGee remained capable of performing his past relevant work and was, therefore, not disabled within the meaning of the Social Security Act.  In reaching his decision, the ALJ "assign[ed] controlling weight to the consultative examination [performed by Dr. Angelito Bernardo], particularly x-ray findings and the ANA titre results."  Record, at 15.  The ALJ discredited much of Mr. McGee's testimony because he found that the record did not support Mr. McGee's assertion that he experienced flare ups about once a month, and that the pain he experienced during those flare ups forced him to miss work for three or four days each time.

The ALJ's decision became the final agency decision when the Appeals Council denied review on March 28, 2003.  *See* 20 C.F.R. §416.1481.  Mr. McGee then filed this lawsuit, seeking review of the agency's decision and an award of Disability Insurance Benefits and Supplemental Security Income.  The parties consented to proceed before a magistrate judge, and the case was reassigned to this Court on July 3, 2003.  Thereafter, both parties moved for summary judgment.  Mr. McGee asks the Court to reverse the Commissioner's denial of his claim for benefits, or, in the alternative, to remand the case to the Commissioner for further

proceedings. The Commissioner has filed a cross-motion for summary judgment, asking the Court to affirm the ALJ's findings.

## Discussion

Disability Insurance Benefits and Supplemental Security Income are available only to claimants who can establish "disability" under the terms of the Social Security Act. The social security regulations provide a five-step sequential analysis to determine whether a claimant is disabled for purposes of eligibility for disability insurance benefits: (1) the ALJ first asks whether the claimant is presently unemployed; (2) if he is, the ALJ next asks whether the claimant's impairment is severe; (3) if it is, the ALJ asks whether that impairment meets or equals one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if it does, the impairment is conclusively disabling, but if it does not, the ALJ asks whether the claimant is able to perform his past relevant work; (5) if the claimant is not able to return to his old job, the ALJ asks whether in light of the claimant's age, education, job experience and functional capacity, the claimant is capable of performing other work that exists in the national economy. *See* 20 C.F.R. §404.1520(a)-(f); *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999); *Anaya v. Apfel*, No. 99 C 3830, 2000 WL 222640, at *6 (N.D. Ill. Feb. 24, 2000). The claimant bears the burden of establishing a disability at steps one through four. 42 U.S.C.

§423(d)(2); 20 C.F.R. §404.1520(f). *See also Anaya*, 2000 WL 222640, at *6.

When reviewing an ALJ's decision under the above analysis, the Court must affirm if it is supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940. At least in this circuit, an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Thus, it is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, the Court must remand. *Steele*, 290 F.3d at 941.

ALJ Dadabo applied the five-step analysis outlined above, first finding that Mr. McGee "has not engaged in any substantial gainful activity since September 4, 2000, the alleged date of disability onset." Record at 17. In other words, at step one, the ALJ found that Mr. McGee was, in fact, presently unemployed. At step two, the ALJ found that Mr. McGee had "gouty arthritis, hypertension, microcytic anemia, peptic ulcer disease with

duodenal ulcer," that he was obese and that he abuses alcohol, a combination of impairments that is considered "severe" under the Social Security Regulations and Act. Record at 17. At step three, the ALJ found that Mr. McGee's impairments do not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.; he also found that the impairments "reasonably would not be expected to produce symptoms of the intensity or restriction that he asserts." Record at 17. Finally, under step four, the ALJ found that Mr. McGee has the residual functional capacity to perform his past work as a security guard. *Id.* The ALJ did not address step five; he made no findings concerning Mr. McGee's ability to perform other work that exists in the national economy.

Mr. McGee argues that the ALJ's decision should be reversed or remanded because his findings at step four, the findings concerning his ability to work as a security guard, are not supported by substantial evidence. At the hearing, Mr. McGee testified that he did not think he could do any job because his gouty flare ups required him to miss three or four days of work every month. The VE essentially confirmed that, if this was indeed the case, Mr. McGee would effectively be removed from the competitive economy, because three to four absences per month would exceed employers' tolerances. The ALJ found, however, that the record did not support Mr. McGee's claims concerning the

frequency of his flare ups or the extent to which they required him to miss work. That finding is, in fact, supported by substantial evidence.

The medical records show that Mr. McGee missed work because of a gouty flare up in April of 1996 and again in November 1996. But those are the only records specifically supporting Mr. McGee's claim that he missed work. These records, when viewed in combination with the other medical records, suggest that Mr. McGee experienced gouty flare ups (or at least sought treatment for those flare ups) less frequently than he claimed; indeed, one progress note states that Mr. McGee had gone a year without experiencing a flare up. *See* Record at 176. The evidence falls far short of supporting Mr. McGee's claim that the flare ups occurred once a month. The ALJ, who examined the evidence on this point in detail, provided a reasonable basis for his findings concerning Mr. McGee's credibility, and the Court will not upset those findings. *See Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994) (because the ALJ is in the best position to observe the demeanor of witnesses, the Court will not disturb the ALJ's credibility determination so long as it finds some support in the record and is not "patently wrong.").

The problem with the ALJ's decision is that he appears to have believed that his credibility findings ended the matter. After concluding that Mr. McGee's claims concerning the frequency

of his flare ups were exaggerated, the ALJ skipped directly to his ultimate conclusion - that Mr. McGee could work - without analyzing the question in any detail and without explaining how he arrived at his ultimate conclusion. Because of this, the Court is unable to afford meaningful review to the ALJ's findings concerning Mr. McGee's residual functional capacity. Certainly, the mere fact that the flare ups occurred less frequently does not, by itself, demonstrate that Mr. McGee retained the residual functional capacity to perform his past work as a security guard. The ALJ should have analyzed whether Mr. McGee's condition, not as reported by him (because he lacked credibility), but as reported in the medical evidence (which the ALJ did not discount), permitted him to continue working as a security guard. He failed to do so.

The record contains little evidence about the requirements of Mr. McGee's past work. At the hearing before the ALJ, Mr. McGee testified that the job involved a substantial amount of walking when making rounds or responding to an incident. Nothing in the record contradicts that testimony, and the ALJ does not appear to have discredited Mr. McGee's description of the job. Although the ALJ called a VE to testify at the hearing, he did not ask him any questions about the requirements of the job; nor did he ask him whether an obese man with the limitations

established in the medical records would be capable of meeting those requirements.

Moreover, whether or not the record contains evidence to support the ALJ's ultimate conclusion that Mr. McGee could work as a security guard, it is clear that the ALJ did not "build a bridge" from the finding that Mr. McGee exaggerated about the frequency of his flare ups, to the finding that he could still work as a security guard. At a minimum, to determine whether Mr. McGee was physically capable of returning to work as a security guard, the ALJ was required to specify the duties involved in that job and assess Mr. McGee's ability to perform those duties. *See Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984). He did not do so; in fact, he did not even mention any specific requirements of the job. At the hearing, the ALJ seemed to accept that the security guard job involved a substantial amount of walking. Yet, he did not explain how the person described in Dr. Bernardo's report – the one piece of evidence the ALJ fully credited – could perform that task. According to Dr. Bernardo, Mr. McGee was obese, had a limping gait, could walk only a block without his cane, had swollen and tender knees and ankles, with decreased range of motion in at least one knee and at least one ankle (due in part to the gout and in part to the obesity). And all of these things were true, despite the fact that Mr. McGee

was not experiencing a flare up; in other words, he was basically at his best when Dr. Bernardo examined him, and he could be expected to become worse off during a flare up. The other medical records are consistent with Dr. Bernardo's findings. To cite just a few examples, progress notes from February 22, 2002 indicate that, on that date, Mr. McGee had a tender right knee. Record at 169. The same was true on March 25, 2002. *Id.* at 170. On September 24, 2002, the progress notes from the VA indicate that Mr. McGee was "ambulatory with a cane," that he was then experiencing "stiffness in the left ankle," and that he experienced intermittent stiffness, pain and swelling in left foot and ankle." Record at 180-81. The notes show that, on July 30, 2002, Mr. McGee had elevated levels of uric acid in his blood serum, which is consistent with gout. *See Dorland's Illustrated Medical Dictionary* 565 (26th ed. 1985) (defining "gout" as "a hereditary form of arthritis characterized by an excess of uric acid in the blood (hyperuricemia) and by recurrent paroxysmal attacks of acute arthritis usually involving a single peripheral joint, followed by complete remission."). One could certainly argue that an obese person with a limping gait, swollen and tender knees and ankles, decreased range of motion in the knees and ankles, etc., might have a hard time working as a security guard. To the extent the ALJ concluded otherwise, he was at least required to explain how he arrived at that conclusion.

This would seem to be particularly true where, as here, in earlier proceedings, the SSA had officially advised Mr. McGee that it "realize[d] that your condition prevents you from doing your past job(s) . . . ." Record at 50.

## CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's findings at step four are not supported by substantial evidence, and that the ALJ failed to build an accurate and logical bridge between the record evidence and his ultimate conclusion that Mr. McGee retained the residual functional capacity to perform his past relevant work as a security guard. The Court, therefore, denies the Commissioner's Motion for Summary Judgment and grants Mr. McGee's Motion for Summary Judgment. The Court remands the case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.


Dated: December 22, 2003          ENTER:



_Arlander Keys_
ARLANDER KEYS
United States Magistrate Judge